# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16CR329 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| SARI ALQSOUS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Sari Alqsous ("Alqsous") styled "Motion for Leave to Amend Motion for Judgment of Acquittal and Motion for New Trial" (Doc. No. 532 ["Mot."]). In connection with this motion, Alqsous seeks a hearing (Doc. No. 565). United States of America (the "government") opposes the motion for a new trial and for judgment of acquittal (Doc. No. 535 ["Opp'n"]).

## I. BACKGROUND

On July 27, 2018, after a five-week jury trial, Alqsous and his three co-defendants were each found guilty of multiple counts of federal fraud and fraud-related offenses. The charges related to crimes committed by Alqsous and his co-defendants during their employment as dentists at MetroHealth Hospital, a public hospital receiving federal and state funding. Alqsous was specifically found guilty of the following crimes: RICO conspiracy, conspiracy to commit mail and wire fraud and honest services mail fraud, Hobbs Act conspiracy, bribery concerning programs receiving federal funds, conspiracy to solicit, receive, offer or pay healthcare

kickbacks, offering or paying healthcare kickbacks, and conspiracy to obstruct justice. (Doc. No. 338 (Alqsous Verdicts).)

At the close of the government's case, each defendant moved for judgment of acquittal under Fed. R. Crim. P. 29(c), and the Court heard extensive argument over a two-day period before ruling on the motions. Specifically as to Alqsous' motion, the Court denied the motion in its entirety, finding that the government had presented ample evidence based upon which a reasonable jury could find guilt beyond a reasonable doubt as to each charge asserted against him.

Following the jury's verdicts, each defendant timely renewed his Rule 29(c) motion. Alqsous also filed a timely motion, pursuant to Fed. R. Crim. P. 33, for a new trial. On December 21, 2018, the Court denied the post-trial motions. (Doc. No. 421 (Memorandum Opinion ["MO"]).) Alqsous' renewed Rule 29(c) motion relied on the same arguments made in his original motion, and the Court denied it for the same reasons offered at trial—that the substantial evidence offered at trial fully supported the jury's guilty as to each charge. (*Id*. at 15915.[1]) The Court also denied Alqsous' motion for a new trial, finding that the jury's verdicts were not against the manifest weight of the evidence. (*Id*. at 15917.)

On April 11, 2019, the Court sentenced Alqsous to an aggregate term of 151 months imprisonment and set a subsequent sentencing hearing on the issue of restitution. (*See* Non-document Order, Apr. 11, 2019.) On April 15, 2019, Alqsous filed a notice of appeal from the Court's announced sentence. (Doc. No. 494.) On May 24, 2019, the Court conducted a restitution hearing, at the conclusion of which, the Court advised that the final restitution amount

---

[1] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

determined at the hearing would be reflected in the Court's final judgment. (Non-document Order, May 24, 2019.) Alqsous filed a second notice of appeal, this time challenging the Court's announced, but not yet journalized, restitution order. (Doc. No. 514.) On May 31, 2019, the Court entered final judgment against Alqsous. (Doc. No. 517 (Judgment).) On June 14, 2019, Alqsous filed an amended notice of appeal from the Court's final judgment. (Doc. No. 531.)

Also on June 14, 2019, Alqsous filed the present motion for leave wherein he, once again, seeks relief from the jury's verdicts under Rules 29 and 33. According to Alqsous, the "motion for leave to file a motion for new trial is based on a faulty Master Affidavit which formed the basis for the search warrant issued against" Alqsous. (Mot. at 23740.) He maintains that the affidavit contains "misleading information about alleged conversation occurring between the FBI Agents in charge of the investigation and the 197 patients of" MetroHealth identified therein. (*Id*.) He further posits that the government "violated its duty under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), by failing to inform [Alqsous] of the fact that either [sic] the FBI never interviewed the patients prior to the issuance of the search warrant." (*Id*.) Alternatively, he claims he is entitled to a new trial based on several items of "newly discovered evidence," including the aforementioned information regarding the lack of patient interviews. (*Id*.)

As noted above, the government opposes the motion. The government questions the Court's jurisdiction to entertain the motion, challenging the timeliness of the motion and underscoring the fact that Alqsous has filed multiple notices of appeals. On the merits, it disputes Alqsous' claims of newly discovered evidence and *Brady* violations.

## II. Discussion

"As a general rule the filing of a notice of appeal divests the district court of jurisdiction and transfers jurisdiction to the court of appeals." *Cochran v. Birkel*, 651 F.2d 1219, 1221 (6th Cir. 1981); *see Taylor v. KeyCorp*, 680 F.3d 609, 616 (6th Cir. 2012) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.") (quotation marks and citation omitted). It is clear that this Court lacks jurisdiction over Alqsous' present motion because the requested relief involves matters related to the merits of the appeal.

But Federal Rule of Criminal Procedure 37(a) provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). Accordingly, before deciding whether an indicative ruling is warranted, the Court must determine whether Alqsous' motion is timely.

As an initial matter, to the extent that Alqsous maintains that the present motion is timely because he previously filed timely motions under Rules 29 and 33, the argument is frivolous. Alqsous' motions for a new trial and judgment of acquittal were denied on December 21, 2018, and "there is no basis in law or fact to conclude that merely because a movant once filed a timely motion for new trial [or for judgment of acquittal], he should be permitted to file a 'renewed' motion at any time in the future without regard to the time limits set forth" in the Federal Rules of Criminal Procedure. *Carter v. United States*, No. 1:09-CR-103-HSM-SKL-1, 2018 WL

1387065, at *11, n.10 (E.D. Tenn. Mar. 19, 2018). Under Fed. R. Crim. P. 29(c), "[a] defendant may move for judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Rule 33 likewise requires a motion for a new trial grounded in any reason other than newly discovered evidence to be filed within 14 days after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(2). The Court discharged the jury on the same day the guilty verdicts were announced (July 27, 2018). (*See* Minutes of Proceedings, July 27, 2018; Doc. No. 338 (Alqsous Jury Verdicts).) Alqsous' amended motion was filed more than six months after the Court denied his original motions and almost a year after the jury verdicts were recorded. Accordingly, unless it is supported by the existence of newly discovered evidence, the present motion is untimely and Alqsous is not entitled to an indicative ruling.[2]

A Rule 33 "motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). "Motions for a new trial based upon newly discovered evidence are disfavored and should be granted with caution." *United States v. Turns*, 198 F.3d 584, 586 (6th Cir. 2000). A new trial motion will be granted based on newly discovered evidence only if the defendant can prove that the evidence: "(1) was discovered only after trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce

---

[2] To the extent the motion can be construed as a motion to suppress evidence based on the sufficiency of the search warrant, it is also untimely. Rule 12(b)(3) requires motions to suppress to be brought before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits[.]" Fed. R. Crim. P. 12(b)(3)(C); *see United States v. Buchanan*, 985 F.2d 1372, 1380 (8th Cir. 1993) ("A defendant who believes that evidence has been illegally obtained must make a motion to suppress it before trial, or the objection is deemed to be waived."); *see also United States v. Walden*, 625 F.3d 961, 964 (6th Cir. 2010) ("Under the Federal Rules of Criminal Procedure, motions to suppress evidence must be raised before the deadline set by the district court.") As discussed *infra.*, the information that forms the basis for Alqsous' post-trial motion to suppress was known by him prior to trial.

5

an acquittal if the case were retried." *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982). On such a motion, where the newly discovered evidence is of minor significance, an evidentiary hearing is necessary only where the verdict is "already of questionable validity." *United States v. O'Dell*, 805 F.2d 637, 643 (6th Cir. 1986) (quotation marks and citation omitted).

Alqsous claims that he is in receipt of newly discovered evidence. Returning to the Master Affidavit supporting the search warrant in this case, he maintains that "it was *recently discovered* that none of the 197 patients were actually interviewed by the FBI prior to trial." (Mot. at 23740, emphasis added.) He contends that "the defects [contained] in the Master Affidavit [relative to whether these patients were interviewed] would at the very minimum mean that the text message[s] and [Alqsous'] cell phone would not be introduced at trial." (*Id.*) Noting that none of these patients were called as witnesses at trial, he further insists that the government clearly violated its duties under *Brady*. (*Id.*)

At least two undisputed facts stand between Alqsous and an indicative ruling on his motion for a new trial. First, the record reflects that on June 4, 2018, approximately three weeks before trial, the government provided defense counsel for all defendants various uncertified records concerning Medicaid data relating to affiant's statement regarding the approximately 190 patients that overlapped between MetroHealth and Alqsous' private clinic. (Doc. No. 535-1 (June 4, 2018 email from government to defense counsel).) These documents then became the subject of pretrial evidentiary motions, as the parties litigated the extent to which defendants could question the government's investigation, including whether counsel could question why the government did not interview patients in connection with the patient referral scheme. (Doc. No. 305 (Government Motion in Limine) at 3792 ["It is clear that the defendants wish to

6

question why the government failed to interview patients in connection with [the patient-referral] scheme."]; Doc. No. 316 (Alqsous' Response to the Government's Motion in Limine) at 5008.) Second, the Master Affidavit did not falsely state that the affiant interviewed any of the patients referenced therein. (*See* Doc. No. 207-2 (Master Affidavit).) In fact, at no time during these proceedings did the affiant—FBI Special Agent Kurt Spielmaker—represent, claim, or testify that he interviewed any of the patients identified in the Master Affidavit.

Based on the actual record, it is clear that Alqsous cannot meet any part of the test set forth in *Barlow* for establishing newly discovered evidence. That the information was disclosed to Alqsous prior to trial precludes Alqsous from meeting the first two prongs of the test. Not only could the evidence have been discovered with due diligence, it was produced by the government and was the subject of pretrial litigation. *See United States v. Hanna*, 661 F.3d 271, 297 (6th Cir. 2011) ("Newly discovered evidence" within the meaning of Rule 33 is evidence discovered only after trial which could not have been discovered earlier even with due diligence); *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991) (Newly discovered evidence is "evidence not known by the defendant at the time of trial."); *see also United States v. Wade*, 93 F. App'x 789, 790 (6th Cir. 2004) (Rule 33 is unavailable where the defendant could have secured the evidence through due diligence or where the purported evidence is "based on facts that were known to him prior to trial.") Further, the information was not material to the charged offenses as violations of the honest services fraud and anti-kickback statutes do not require a showing that Alqsous and his co-defendants were successful in referring patients. The information also would not have contradicted any part of the Master Affidavit and would not have, therefore, supported a motion to suppress Alqsous' text messages or likely yielded a different result at trial. On that note,

Alqsous does not even mention the wealth of other trial evidence, including the testimony of over 50 witnesses linking Alqsous to the charged schemes, and rendering it highly unlikely that the evidence would have produced an acquittal. Accordingly, the last two prongs of the test are not satisfied, as well.[3]

Because Alqsous has failed to identify the existence of newly discovered evidence, his latest post-trial motion for a new trial is untimely and he is not entitled to an indicative ruling under Fed. R. Crim. P. 37. But even if the motion were timely, Alqsous' argument alleging *Brady* violations would still fail because the evidence was disclosed prior to trial and its use in the manner now suggested by Alqsous would not likely have led to an acquittal. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (Undisclosed *Brady* evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"); *United States v. Graham*, 484 F.3d 413, 415 (6th Cir. 2007) (To establish a *Brady* violation, a defendant must show that the government suppressed evidence, that such evidence was favorable to the defense, and that the suppressed evidence was material).

---

[3] The fact that newly retained counsel would like to revisit certain issues, or would have preferred that this *known* information be utilized in a different way at trial, does not change the analysis. "An attempt to relitigate the case on a new theory is not considered newly discovered evidence but is merely [a] newly discovered issue of law." *United States v. Olender*, 338 F.3d 629, 636 (6th Cir. 2003); *see also Seago*, 930 F.2d at 489 (newly discovered evidence does not include new legal theories or new interpretations of the legal significance of the evidence).

## III. CONCLUSION

For the forgoing reasons, Alqsous' motions for a new trial and/or judgment of acquittal (Doc. No. 532) and for a hearing[4] (Doc. No. 565) are DENIED.

**IT IS SO ORDERED**.


Dated: September 27, 2019

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**

---

[4] Given the ample evidence offered at trial to support the jury's verdicts against Alqsous, the verdicts are not otherwise of "questionable validity" such that an evidentiary hearing would have been necessary. *See O'Dell*, 805 F.2d at 643.