# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16-cr-329-2 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| SARI ALQSOUS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Now before the Court is the motion of defendant Sari Alqsous ("Alqsous") for a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. No. 583 ["Mot."].) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 584 ["Opp'n"]), Alqsous has filed a reply (Doc. No. 586 ["Reply"]), and the government has sought leave to file a sur-reply (Doc. No. 587 ["Sur-Reply"]), which Alqsous opposes (Doc. No. 588 ["Sur-Opp'n"). For the reasons that follow, Alqsous' motion is DENIED.[1]

## I.  BACKGROUND

On July 27, 2018, after a five-week jury trial, Alqsous and his three co-defendants were each found guilty of multiple counts of federal fraud and fraud-related offenses. The charges related to crimes committed by Alqsous and his co-defendants during their employment as dentists at MetroHealth Hospital, a public hospital receiving federal and state funding and

---

[1] Because the Court finds that Alqsous raised new arguments in his reply (*see* Doc. No. 586), the Court grants the government's motion for leave to file a sur-reply. (Sur-Reply).

serving the poorest citizens of Cuyahoga County, Ohio. Alqsous was specifically found guilty of the following crimes: RICO conspiracy; conspiracy to commit mail and wire fraud and honest services mail fraud; Hobbs Act conspiracy; bribery concerning programs receiving federal funds; conspiracy to solicit, receive, offer or pay healthcare kickbacks; offering or paying healthcare kickbacks and conspiracy to obstruct justice. (Doc. No. 338 (Alqsous Verdicts).)

On April 11, 2019, the Court sentenced Alqsous to an aggregate term of 151 months imprisonment. On May 24, 2019, the Court conducted a restitution hearing, and, on May 31, 2019, the Court entered final judgment against Alqsous. (Doc. No. 517 (Judgment).) In addition to the 151 month term of imprisonment, the Court ordered restitution in the aggregate amount of $913,841.88, a portion of which was to be paid on a joint and several basis with Alqsous' co-defendants, and a special assessment of $1,600. (*Id*. at 20250.) Alqsous has appealed his conviction and sentence, and his appeal remains pending in the United States Court of Appeals for the Sixth Circuit.

Alqsous is currently serving his sentence at Moshannon Valley CI ("MVCC") and has a projected release date of April 14, 2029. *See* https://www.bop.gov/inmateloc/ (last visited 6-18-2020). Upon release from BOP custody, Alqsous is subject to mandatory deportation. (Judgment at 20249.)

On May 27, 2020, Alqsous filed the present motion for a compassionate release due to COVID-19. In support, he cited generally the circumstances surrounding the pandemic and the difficulties of containing the spread of the virus in the custodial setting. He admits that he "does not currently have any underlying health issues," and he does not allege that he has any risk factors that would increase his risk of suffering serious illness should he contract the virus. (Mot.

2

at 24417.) He further concedes that "MVCC does not currently report any active infections" but insists that he should not have to wait to become infected by the virus. (*Id*. at 24409, 24417.) He argues that the Court should take into account his good prison disciplinary record, the possibility that he might prevail on issues raised on direct appeal of his sentence, and that his medical background could be put to good use during this pandemic.

As noted above, the government opposes the motion. The government questions the Court's jurisdiction to entertain the motion, and argues, on the merits, that the 18 U.S.C. § 3553(a) factors strongly weigh against immediate release. The government also maintains that Alqsous may not be released because he poses a danger to the safety of the community. Finally, the government rejects Alqsous' arguments relative to the merits of his appellate issues and his medical experience as irrelevant and "nonsensical," respectively.

## II. This Court Lacks Jurisdiction over his Motion

As a threshold matter, the Court must determine whether it may entertain Alqsous' motion at the present time. "As a general rule the filing of a notice of appeal divests the district court of jurisdiction and transfers jurisdiction to the court of appeals." *Cochran v. Birkel*, 651 F.2d 1219, 1221 (6th Cir. 1981); *see Taylor v. KeyCorp*, 680 F.3d 609, 616 (6th Cir. 2012) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.") (quotation marks and citation omitted).

The government argues that the pendency of Alqsous' direct appeal may divest this Court of jurisdiction over the instant motion for compassionate release. In support of immediate release, Alqsous argues that the impact of the recent U.S. Supreme Court decision in *Kelly v.*

*United States*, --U.S.--, 140 S. Ct. 1565 (2020), should be considered in connection with the present motion. (Mot. at 24418, capitalization omitted.) Alqsous also raised the ruling in *Kelly* as a basis for reversal on direct appeal and argues herein that "[t]he Court should therefore take into consideration the holding in *Kelly*, as it could result in a reversal of some or all of [his] convictions, or a reduction in his sentence." (*Id.* at 24420.)

The parties have expended considerable energy in the briefing of the present motion discussing the potential impact of the decision in *Kelly* and whether Alqsous waived the argument by failing to raise it in his opening appellate brief. (Opp'n at 24475-76; Reply at 24487-88; Sur-Reply at 24490-91; Sur-Opp'n at 24497.) Regardless of whether this Court may consider the likelihood of success on the merits of any appeal in its consideration of a compassionate release, it is clear that this appellate issue is intricately entwined with the present motion. *See United States v. Walls*, No. 92-cr-80236, 2020 WL 1934963, at *2 (E.D. Mich. Apr. 22, 2020) (the district lacked jurisdiction over defendant's motion for compassionate release due to COVID-19 because the "requested relief involves matters related to the merits of the defendant's appeal"). Accordingly, the Court finds that it likely lacks jurisdiction over Alqsous' present motion because the requested relief involves matters related to the merits of the appeal. *See, e.g., United States v. Vigna*, No. S1 16-CR-786-3, at *3 (NSR), 2020 WL 1900495 (S.D.N.Y. Apr. 17, 2020) (district court finding that it was "without authority to rule on [defendant's] Section 3582(c)(1)(A) application because it would affect an aspect of the case that [is] before [the Court of Appeals]") (quotation marks and citation omitted).

But Federal Rule of Criminal Procedure 37(a) provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and

4

pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). Given the urgency implied in motions for compassionate release due to the COVID-19 pandemic, the Court elects to reach the merits and deny Alqsous' motion.

### III. COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(C)(1)(A)(I)

#### A. Exhaustion

As the Court has recently noted in other cases involving similar motions, the sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington,* 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston,* 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross,* 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act of 2018 (FSA) amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's

decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Alqsous claims that he has satisfied the statutory exhaustion requirements because the warden has denied his request and thirty days has passed since he first submitted that request to the warden. (Mot. at 24404.) There is a split in authority on the question of whether the exhaustion requirement is satisfied simply by making a formal initial request and allowing thirty days to elapse prior to filing suit (regardless of the outcome of the initial request), or whether a response by the warden within 30 days "eliminat[es] the elapse of thirty (30) days as a path to judicial review because this denial, unlike an implicit denial, can be appealed administratively." *See United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, 2020 WL 2521273, at \*3 (E.D. Tenn. May 13, 2020) (finding inmate who had his administrative request for compassionate release denied by warden within 30 days was required to fully exhaust administrative remedies before filing suit); *see also United States v. Fields*, No. 3:12-cr-00022-JKS-1, 2020 WL 2744109, at \*4–5 (D. Alaska May 6, 2020) (noting the split in authority and collecting cases).

The Sixth Circuit appears to have weighed in on this debate over statutory interpretation in favor of finding that the passage of thirty days, regardless of the availability of administrative appeals, triggers an inmate's right to proceed in federal court. *See Alam*, No. 20-1298, at \*5 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, *no matter the appeals available to them*.") (emphasis added). In any event, the court in *Alam* also held that the exhaustion requirements in § 3582(a)(1)(A), while mandatory claim-processing rules, are not jurisdictional in nature. *Id*. at \*3. Because these statutory

exhaustion requirements are not jurisdictional, they bind a court "only when properly asserted and not forfeited." *Id.* (citing *Eberhart v. United States*, 546 U.S. 12, 19, 126 S. Ct. 403, 163 L. Ed. 2d 14 (2005) (per curiam)). The government has forfeited any exhaustion argument by failing to address it in its response, and, therefore, the Court finds exhaustion is not a bar to the present motion.

### B.      Availability of Compassionate Release

There are three components to a compassionate release merits analysis: (1) whether extraordinary and compelling reasons warrant a reduction in sentence, as described by the United States Sentencing Commission; (2) whether the § 3553(a) factors—"to the extent that they are applicable"—render the reduction inappropriate; and (3) whether defendant would be a danger to the public.

#### 1.      Extraordinary and Compelling Circumstances

Alqsous is a healthy 36 year old male with no "underlying health issues," and he does not suggest that he has any serious medical conditions that would constitute extraordinary and compelling circumstances. (Mot. at 24417.) And while he concedes that there are currently no confirmed cases of COVID-19 at his facility, he relies exclusively on the current pandemic and its impact generally on the federal prison system to supply a basis for the Court to find the existence of extraordinary and compelling circumstances. (*Id.* at 24407-13.)

The applicable policy statement issued by the United States Sentencing Commission, § 1B1.13 of the U.S.S.G., explains that extraordinary and compelling reasons may exist where the defendant is "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to self-care within the environment of a correctional

facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I)[2]. The Court also finds that U.S.S.G. § 1B1.13 cmt. n.1(D) applies in this case. That provision mandates that, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other reasons enumerated in U.S.S.G. § 1B1.13 cmt. n.1. While the section refers to a BOP determination, the Sentencing Commission's policy statement was not amended after the enactment of the FSA. Consequently, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release … because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, No. 89-CR-0655, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 447, 499 (S.D. Iowa 2019) (collecting district court cases)). Given this lack of applicable guidance, courts have held that they are not constrained by prior Commission policy statements as to what constitutes extraordinary and compelling reasons for a sentence reduction. *See United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting that "a majority of district courts have concluded that the old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)") (quotation marks and citations omitted); *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL

---

[2] An inmate can also demonstrate a medical condition that satisfies the existence of an extraordinary and compelling reason requirement if he can show he is "suffering from a terminal illness," suffering from a serious functional or cognitive impairment," or he is "experiencing a deteriorating physical or mental health because of the aging process." 18 U.S.C. § 1B1.13(1)(A) cmt. 1(A)(i) and (ii)(II), (III). Alqsous is 36 years old and does not argue that he suffers from a medical condition that would fall into any of these categories, nor would the record support such a finding.

1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("In short, federal judges are no longer constrained by prior Commission policy statements as to what constitutes extraordinary and compelling reasons for a sentence reduction. *See United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (noting that "a majority of district courts have concluded that the old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether extraordinary and compelling reasons warrant a sentence reduction under § 3582(c)(1)(A)") (quotation marks and citations omitted); *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.")

Further, in light of the unprecedented circumstances surrounding the COVID-19 pandemic, "[n]umerous courts have recently concluded that 'extraordinary and compelling reasons' exist for purposes of § 3582(c)(1)(A) where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19." *United States v. Jackson*, No. 5:02-cr-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020); *see Bolze*, 2020 WL 2521273, at *7 (noting that "a defendant's medical condition could provide an extraordinary and compelling reason under § 1B1.13 n.1(A)(ii) if a defendant suffers from a chronic medical condition that the Centers for Disease Control has recognized as elevating the risk of becoming seriously ill from COVID-19").

In its opposition, the government does not seriously dispute that an inmate with an established risk factor for COVID-19 identified by the Centers for Disease Control and Prevention ("CDC") could satisfy the standard of "extraordinary and compelling reasons,"

9

provided the condition reasonably could be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if the condition would not support such a finding absent the risk of COVID-19. *See* U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I)); (Opp'n at 24465 ["The government acknowledges that COVID-19 may affect whether an inmate can show an 'extraordinary and compelling reason" for immediate release"].) Instead, it argues that the existence of the COVID-19 virus alone cannot satisfy the requirement that there be extraordinary and compelling circumstances supporting compassionate release. The Court agrees.

Courts have consistently held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Eberhart*, 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)"); *United States v. Wright*, No. 15-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to one person. The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner.")

Because Alqsous relies exclusively on the threat of COVID-19 to demonstrate the existence of extraordinary and compelling reasons (*see* Mot. at 24407-13), he has failed to meet

his burden of demonstrating his entitlement to immediate release. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) (The defendant has the burden to show that he is entitled to a sentence reduction); *see also United States v. Solis*, 16-015-CG-MU, 2019 WL 2518452, at *3 (S.D. Ala. June 18, 2019) (inmate has not shown he is entitled to compassionate relief because, among other things, "his motion wholly fails to indicate, much less provide documentation, that [his] medical conditions qualify him for compassionate release"). For this reason alone, his motion for immediate release is properly denied.

But even if Alqsous had cleared this initial hurdle, this would not end the analysis, as the Court would next consider the § 3553(a) factors.

2. § 3553(a) Factors

Alqsous argues that a weighing of the § 3553(a) favors his immediate release. Specifically, he notes that he is a non-violent offender with zero criminal history points, making him less likely to recidivate. (Mot. at 24413-14.) He suggests that this is "corroborated by the fact that he has a clean disciplinary history." (*Id*. at 24414.) But the compassionate release statute directs courts to consider all of the 18 U.S.C. § 3553(a) sentencing factors "to the extent that they are applicable[.]" 18 U.S.C. § 3582(c)(1)(A). Other applicable factors would include the nature and circumstances of the offense, and the need for the sentence imposed (to reflect the seriousness of the offense; afford adequate deterrence; protect the public; and provide the defendant with needed education, training, and treatment). Additionally, the Court may only order a compassionate release if it finds that Alqsous "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(2).

In his capacity as a dentist and a public official, Alqsous engaged in a multi-year, multi-faceted and sophisticated fraud scheme wherein he and others received kickbacks and other unlawful renumeration at the expense of his patients, his public hospital, and the taxpayers of Cuyahoga County, Ohio. Alqsous, along with two of his co-conspirators—Edward Hills and Yazan Al-Madani—also obstructed justice in an effort to avoid detection by MetroHealth Hospital and state and federal authorities. Alqsous received a significant sentence (151 months) for his crimes of which he concedes he has served less than twenty percent (20%), and the Court takes issue with his suggestion that he has already served the equivalent of a "significant term of imprisonment."[3] (Mot. at 24415-16.) Moreover, at sentencing, the Court expressed its astonishment with the vigor in which Alqsous pursued his illegal ventures, noting that "we have an individual who arrives at the hospital and is already engaging in corrupt activity and it just never stopped." (TR at 24065; *see also id*. at 24063 [underscoring that Alqsous engaged in "one corrupt scheme after another, after another, after another"].) Given the breadth and extent of Alqsous destructive and fraudulent behavior, the Court agrees with the government that requiring Alqsous to complete his sentence upholds the respect for the law and the need for general

---

[3] Alqsous posits that the 28 months he has already served "is six months *greater* than the average sentence imposed" on bribery/corruption offenders in fiscal year 2019. (Mot. at 24415, emphasis in original.) Yet, Alqsous was not convicted of isolated acts of bribery or corruption. Instead, he received a within guidelines sentence for his leadership role in many elaborate schemes to defraud MetroHealth Hospital and the public that spanned several years. At sentencing, the Court observed that "no scheme [was] too bold" for Alqsous, whose crimes were "effected at the expense of the public and indigent patients the hospital was committed to serve." Doc. No. 539 (Sentencing Transcript ["TR"] at 24064.) Alqsous received an appropriate sentence that reflected the breadth of the criminal enterprises in which he engaged and the crimes he committed.

deterrence.[4]

Alqsous' other arguments, which relate to his appellate issues, his medical background, and his lack of criminal history points, likewise come up short. The likelihood of success on direct appeal is not one of the enumerated factors under § 3553(a), and Alqsous cites no authority for the proposition that it is a proper consideration on a motion for a compassionate release. As to the good he could do in the midst of this pandemic, Alqsous had his opportunity to help his community as a medical provider, but he elected, instead, to victimize that same community for his own personal gain. That he now wishes to be "put to good use" is too little too late. As for his past criminal record, the fact that he had no significant history of criminal activity prior to the present case has already been reflected in the sentence he received. The Court finds that shortening the sentence further to time-served would undermine the need for the sentence imposed to reflect the seriousness of the crimes committed. Finally, while the Court commends Alqsous for his good behavior in his time in prison, granting a release on the basis of "rehabilitation" alone is prohibited by statute, *see* 28 U.S.C. § 994(t), and the Court finds no

---

[4] Alqsous highlights the fact that one of his co-defendants, Tariq Sayegh, has already been released to home confinement. His comparison to co-defendant Sayegh is unavailing for a number of reasons. First, the BOP made the decision to release Sayegh. Its decision was not constrained by a consideration of §§ 3582 and 3553(a). Second, unlike Alqsous and his other two co-conspirators—Hills and Al-Madani—Sayegh was only involved in one fraudulent scheme. His substantially lower sentence of 60 months (*see* Doc. No. 498 [Sayegh Judgment]) reflects his more limited role in the overall conspiracy. Third, as the government notes, Sayegh is not subject to deportation like Alqsous; thus aspects of the First Step Act are available to him, such as home confinement and early release, while they remain statutorily unavailable to Alqsous. Finally, Sayegh was not convicted of obstruction of justice, as Alqsous was.

other compelling reason to grant Alqsous a compassionate release.[5] *See also* U.S.S.G. § 1B1.13.

The Court is sympathetic to Alqsous' fear that he will contract COVID-19 in prison. Nonetheless, the Court finds that the § 3553(a) sentencing factors counsel against granting him a compassionate release.

### C. Request for Recommendation for Home Confinement or RRC Placement

As an alternative to compassionate release, Alqsous "request that this Court recommend to the BOP that he be considered for furlough as soon as practicable." (Mot. at 24421.) The court construes this as a request for a judicial recommendation for home confinement or Residential Reentry Center ("RRC") placement. The BOP, pursuant to 18 U.S.C. § 3624(c)(1) as amended by the Second Chance Act, Pub. L. No. 110-199, § 251(a), 122 Stat. 657 (2008), may place an inmate in community or home confinement for no longer than twelve months at the end of his or her sentence. *See Demis v. Sniezek*, 558 F.3d 508, 514 (6th Cir. 2009). While a court may make non-binding recommendations for placement in an RRC or home confinement, the BOP has the exclusive authority to determine if an inmate should be placed in such a setting and, if so, for how long. 18 U.S.C. § 3621(b); *see Martin v. United States*, No. 05-17, 2008 WL 3546433, at *1–2 (W.D. Pa. Aug. 12, 2008).

The First Step Act modified § 3624 to further explain who was eligible for prerelease custody. Pub. L. No. 115-391, § 102. The Act elaborates on the risk reassessment levels needed

---

[5] The government argues that the Court should also find that Alqsous represents a danger to the community. Relying on the economic and pecuniary harm he and his co-conspirators inflicted on MetroHealth and the public, the government argues that "Alqsous would pose a danger to public safety if released." (Opp'n at 24470.) While the Court agrees with the government that Alqsous' schemes caused real economic harm to the community, it was his position as a public official and practicing dentist that made that harm possible. It is unlikely that Alqsous will ever occupy a public position again in this country and, as the government notes, his dentistry license is now subject to permanent revocation. But as set forth above, the Court need not reach a determination as to whether Alqsous would represent a danger to the community if released because he does not otherwise satisfy the requirements for compassionate release.

14

for a prisoner to be considered for prerelease custody. *Id.* It also details the types of prerelease custody, which include home confinement and placement in an RRC. *Id.* However, it did not modify the requirement that the BOP, not the Court, make the decision to place a prisoner on home confinement or in an RRC. *See* 18 U.S.C. § 3624(b)(1) & (c)(1); *Heard v. Quintana*, 184 F. Supp. 3d 515, 520 (E.D. Ky. 2006) (explaining that the BOP may consider placing a federal inmate in home confinement or an RRC). Further, the First Step Act did not alter the fact that the Second Chance Act does not guarantee RRC placement or home confinement, it only directs the Director of the BOP to consider it. *See Demis*, 558 F.3d at 514.

The BOP's decision whether to place a prisoner in home confinement or in an RRC at the end of his sentence is guided by five factors set forth in 18 U.S.C. § 3621(b). One of those factors is any statement from the sentencing court. § 3621(b)(4). Accordingly, the sentencing court is permitted, where appropriate, to make a non-binding recommendation to the BOP.

Even if Alqsous were eligible for placement in an RRC or into home confinement,[6] for many of the same reasons the Court determined that Alqsous is not entitled to a compassionate release, the Court finds that it would be inappropriate to recommend him for early RRC placement or home confinement.

---

[6] As a deportable alien, it is unlikely that Alqsous would qualify to serve a portion of his sentence in community control. *See United States v. Saeed-Watara*, 3:09-cr-00118-TBR, 2017 WL 627435, at *1 (W.D. Ky. Feb. 15, 2017) (noting that "BOP regulations do not ordinarily allow deportable aliens to be placed in community confinement") (citing cases).

## IV. CONCLUSION

For the foregoing reasons, as well as the reasons in the government's brief opposing compassionate release, Alqsous' motion for a compassionate release is DENIED. The Court also elects not to recommend Alqsous for early RRC placement or home confinement.

**IT IS SO ORDERED**.

Dated: June 19, 2020

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**